# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:11CV450-MOC-DSC

| | |
|---|---|
| SHIRLEY BOSTON, | ) |
|     Plaintiff, | ) |
| v. | ) **MEMORANDUM AND RECOMMENDATION** |
| PETE DAVIS, et al., | ) **AND ORDER** |
|     Defendants. | ) |

**THIS MATTER** is before the Court on "Defendant Captain Pete Davis' Motion to Dismiss," Doc. 10, filed on September 30, 2011, and "Motion to Dismiss of Defendants Benard and Williams," Doc. 11, filed on October 18, 2011. On October 19, 2011, the Court issued an Order, Doc.13, advising Plaintiff that she had until November 18, 2011 to respond to the two Motions to Dismiss. On November 7, 2011, Plaintiff filed "Plaintiff's Memorandum of Law in Response to Defendant Pete Davis Memorandum of Law in Support of His Motion to Dismiss," Doc. 14. On November 17, 2011, Defendant Davis filed "Defendant Captain Pete Davis' Reply to Plaintiff's Response to Davis' Motion to Dismiss," Doc. 15. Defendants Benard and Williams did not file a reply and the time for filing a reply has expired.

This matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motions to Dismiss be <u>granted</u>, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Accepting the allegations of the *pro se* Complaint, Doc. 1, as true, as we must at this early stage in the proceeding, Plaintiff is the biological grandmother of Tiffany Wright ("Tiffany"), now deceased, who was born in 1993 in Buffalo, New York. In 1995, Tiffany was removed from her mother's custody and placed in foster care. In 2002, Tiffany was adopted by Alma Wright. In 2004 or 2005, Alma Wright moved to Kings Mountain, North Carolina with Tiffany. In 2008, Plaintiff reestablished contact with Tiffany. Tiffany informed Plaintiff that she was "being [p]hysically, [m]entally, and emotionally, abused by [h]er adoptive [m]other Alma Wright, [o]ther [m]embers of Alma's [i]mmediate [f]amily and Alma's next [d]oor [n]eighbor." Doc. 1 at ¶ 7. Plaintiff alleges that she contacted Defendants Candi Benard and Jeanna Williams of the Gaston County Department of Social Services (DSS) regarding the abuse and that no investigation was conducted.

On January 25, 2009, Alma Wright died. On January 30, 2009, Alma Wright's son, Royce Mitchell, sought to become Tiffany's guardian. On February 5, 2009, Plaintiff alleges that the Mecklenburg County Superior Court appointed Mitchell as temporary guardian. Around this time, Plaintiff alleges that Tiffany informed her and DSS employees[1] that Mitchell was raping her, that she was pregnant and that Mitchell may be the father of her child. Plaintiff alleges that she contacted Charlotte Mecklenburg Police and "she believes she [s]poke to a Pete Davis." She also contacted Defendant Candi Benard. Plaintiff informed Davis and Benard that Mitchell had threatened to kill Tiffany. Id. at ¶ 13.

---

[1] Plaintiff's Complaint does not specify whether these DSS employees were with Gaston or Mecklenburg County.

Tiffany was later placed in foster care as a result of problems with Mitchell's home study.[2] On September 14, 2009, Tiffany was shot and killed at a school bus stop in Mecklenburg County. Her fetus also died.

On September 15, 2011, Plaintiff commenced this action under 42 U.S.C. § 1983 alleging that Defendants were deliberately indifferent to Tiffany's safety, and failed to protect her from rape and death in violation of Tiffany's and Plaintiff's rights under the Fourteenth Amendment of the United States Constitution.

On September 30, 2011, Defendant Davis filed his Motion to Dismiss, Doc. 10, arguing that Plaintiff's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because it is devoid of any factual allegations that Davis or anyone on his behalf entered into a special relationship with Tiffany. Therefore, Davis contends that he did not deprive Tiffany nor Plaintiff of their due process rights under the Fourteenth Amendment of the United States Constitution.

On October 18, 2011, Defendants Benard and Williams filed their Motion to Dismiss, Doc. 11, arguing that Plaintiff's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim against either Defendant because no constitutional violation has occurred and no duty existed. Alternatively, they assert that if a constitutional violation occurred, qualified immunity bars any claims against them.

In her Response to the Motions to Dismiss, Doc. 14, Plaintiff argues that she has pled sufficient facts to support claims for due process violations against all Defendants. In the alternative, without giving any forecast of the additional facts that she would bring forward, Plaintiff

---

[2] Plaintiff's Complaint does not specify whether Gaston or Mecklenburg County Courts placed Tiffany in foster care.

requests leave to amend her Complaint to cure any deficiency in her claims against Davis.

The Motions to Dismiss have been briefed and are now ripe for review.

## II. DISCUSSION OF CLAIMS

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 554-55) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading

regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1951. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id. at 1951-52.

This Court is mindful of the latitude extended to the pleadings of *pro se* litigants. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (courts should "[c]onstru[e] [a *pro se*] petitioner's inartful pleading liberally"). However, courts cannot act as the *pro se* plaintiff's advocate or develop claims which the plaintiff failed to raise clearly on the face of her complaint. Gordon v. Leeke, 574 F.2d 1147, 1152 (4th Cir. 1978) (recognizing that district courts are not expected to assume the role of advocate for the pro se plaintiff). See also Brock v. Carroll, 107 F.3d 241, 243 (4th Cir.1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir.1985). As a result, even a *pro se* plaintiff's basis for relief "requires more than labels and conclusions...." Twombly, 550 U.S. at 555. Like plaintiffs who are represented by counsel, a *pro se* plaintiff must still "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003). Conclusory statements and insufficient factual allegations

will not survive a motion to dismiss under Rule 12(b)(6), even when asserted by *pro se* plaintiffs.

### B. 42 U.S.C. § 1983 Claims

Section 1983 is not a source of substantive rights but rather a method for vindicating federal rights conferred by the United States Constitution or provided by statute. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Qualified immunity from § 1983 claims "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Claims of qualified immunity involve a two-pronged inquiry where immunity will be granted unless (1) "the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right," and (2) "the right at issue was 'clearly established' at the time of [the] alleged misconduct." Id. at 232. It is within the Court's discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 236.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." As the Supreme Court explained in Deshaney v. Winnebago County Dep't of Social Services,

> Nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The

6

> Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text. Like its counterpart in the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment was intended to prevent government "from abusing [its] power, or employing it as an instrument of oppression"[citations omitted]. . . Its purpose was to protect the people from the State, not to ensure that the State protected them from each other.

489 U.S. 189, 195-96 (1989).

The Fourth Circuit has recognized that the Due Process Clause does not protect an individual from injuries caused by third parties where a police officer fails to act after receiving information that a person may be in danger. This is true even if the officer promises to assist that person. In Pinder v. Johnson, 54 F. 3d 1169, (4th Cir. 1995), a police officer assured a domestic violence victim that the abuser would be locked up overnight and that it was safe for her to return to work. However, the defendant was charged with a minor offense and released on bond. He returned to the residence and set it on fire, killing three children inside. The victim sued the officer alleging that he violated her due process rights by failing to protect her and her children.

In denying her constitutional claim, the Fourth Circuit relied upon Deshaney and reasoned that

> "[i]f the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them. As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."....The affirmative duty of protection that the Supreme Court rejected in Deshaney is precisely the duty Pinder relies on in this case. [Pinder] wanted the state to be held liable for its lack of action . . . Deshaney makes clear, however, that no affirmative duty was clearly established in these circumstances.

Pinder, 54 F.3d at 1174 (quoting Deshaney, 489 U.S at 196-97).

The affirmative duty to protect an individual is secured by the Fourteenth Amendment's Due Process Clause only in the limited circumstance where the government establishes a "special relationship" with that individual. Deshaney, 489 U.S. at 200. Confinement of the injured party by incarceration, institutionalization, or the like, is necessary to trigger the affirmative duty. Id. The Fourth Circuit has consistently read DeShaney to require a custodial context before any affirmative duty arises under the Due Process Clause. See, e.g., Doe ex rel. Johnson v. S. C. Dept. of Soc. Servs., 597 F.3d. 163 (4th Cir. 2010) cert. denied, 131 S. Ct. 392 (U.S. 2010) (holding that constitutional duty of care is only triggered when the state places someone in custody and harm follows after that placement); Rowland v. Perry, 41 F.3d 167,174-75 (4th Cir. 1994) (noting that when the state has not restricted one's ability to care for oneself, the rationale for an affirmative duty is absent); Piechowicz v. United States, 885 F.2d 1207, 1215 (4th Cir.1989) (holding that "substantive due process protects the liberty interests only of persons affirmatively restrained by the United States from acting on their own behalf.").

By requiring a custodial context as the prerequisite for an affirmative duty, DeShaney rejected the premise that such a duty can arise solely from an official's awareness of a specific risk or from promises of aid. Deshaney, 489 U.S. at 200. As explained by the Fourth Circuit in Pinder,

> Promises do not create a special relationship-custody does. Unlike custody, a promise of aid does not actually place a person in a dangerous position and then cut off all outside sources of assistance. Promises from state officials can be ignored if the situation seems dire enough, whereas custody cannot be ignored or changed by the persons it affects. It is for this reason that the Supreme Court made custody the crux of the special relationship rule.

54 F.3d at 1175.

### 1. Claims against Defendant Davis

The Court finds that Plaintiff has not pled facts to establish that Davis affirmatively placed

Tiffany into state custody or exercised any act restraining her liberty. Therefore, Davis had no constitutional duty to protect Tiffany from harm by private parties.

Plaintiff argues in her Response, Doc. 14, that Davis' Motion to Dismiss should not be granted because she provided Davis with notice that Tiffany was in danger and Davis "chose to ignore the Danger notwithstanding the notice." Doc. 14 at 4. In addition, Plaintiff argues that Davis "took Affirmative Act to Let a Known danger run Loose." Id. at 5. In support of her argument Plaintiff relies upon Doe ex rel. Johnson v. S. C. Dept. of Soc. Servs., 597 F.3d. 163 (4th Cir. 2010), cert. denied, 131 S. Ct. 392 (U.S. 2010), Tamas v. Dept. of Social & Health Servs., 630 F.3d 833 (9th Cir. 2010), and Rutherford v. City of Newport News, 919 F. Supp. 885 (E.D. Va. 1996), affirmed, 107 F.3d. 867 (4th Cir. 1997).

The Court finds that Plaintiff's reliance on Rutherford, Tamas, and Doe is misplaced. These cases support the proposition that a duty to protect is triggered when the State places an individual into involuntary custody. Based upon the facts pled by Plaintiff and viewed in a light most favorable to her, it is undisputed that Tiffany was not in state custody or the custody of Davis when she was sexually assaulted by Mitchell. Moreover, she was not in the custody of the state or Davis when she was murdered. Consequently, the undersigned respectfully recommends that Plaintiff's claim against Defendant Davis in his individual capacity be dismissed.

Since there is no underlying constitutional violation by Defendant Davis in his individual capacity, Plaintiff's official capacity claims against Davis should also be dismissed. See Holloway v. City of Suffolk, 660 F. Supp.2d 693, 699 (E.D. Va. 2009) (quoting Waybright v. Frederick Cnty., 528 F.3d 199, 203-04 (4th Cir. 2008)(holding that the §1983 claim against the individual is "the gateway to all the other §1983 claims, for supervisors and municipalities cannot be liable under §1983 without some predicate constitutional injury at the hands of the individual [state] officer.").

9

The undersigned respectfully recommends that Plaintiff's claim against Defendant Davis in his official capacity be dismissed.

### 2. Claims against Defendants Benard and Williams

The Court finds that Plaintiff has pled no facts to establish that Tiffany suffered actual harm at the hands of Defendants Benard and Williams. Additionally, no facts have been pled to establish that Defendants Benard and Williams exercised any affirmative act restraining Tiffany's liberty which would have created a special relationship between them. Therefore, there is no constitutional duty on the part of Benard and Williams to protect Tiffany Wright from harm by private parties.

Plaintiff argues in her Response, Doc. 14, that Doe v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 171 (4th Cir. 2010), cert. denied, 131 S. Ct. 392 (U.S. 2010), establishes an affirmative duty by social workers to protect a foster child and thus, Defendants Benard and Williams cannot escape liability for their failure to protect Tiffany.

The Fourth Circuit held for the first time in Doe that

> [W]hen a state involuntarily removes a child from her home, thereby taking the child into its custody and care, the state has taken an affirmative act to restrain the child's liberty, triggering the protections of the Due Process Clause and imposing "some responsibility for [the child's] safety and general well-being." DeShaney, 489 U.S. at 200, 109 S.Ct. 998. Such responsibility, in turn, includes a duty not to make a foster care placement that is deliberately indifferent to the child's right to personal safety and security. This does not mean that social workers will be duty-bound to protect the child from unknown harm or dangers. Nor "does [it] mean that every child in foster care may prevail in a section 1983 action against state officials based on incidental injuries or infrequent acts of abuse." Taylor, 818 F.2d at 797. Negligence, and even carelessness, on the part of such officials that results in harm to the child will not support a claim. But "where it is alleged and the proof shows that the state officials were deliberately indifferent to the welfare of the child," liability may be imposed. Id. Such "[a] claim of deliberate indifference, unlike one of negligence, implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice." White, 112 F.3d at 737.

597 F.3d at 175. Doe was decided in 2010, the year following Tiffany's death. The inquiry into

whether any violation of constitutional rights occurred depends upon an assessment of the settled law at the time the rights were alleged to have been violated. Pinder, 54 F.3d at 1173-74 (citing DiMeglio v. Haines, 45 F.3d 790, 794 (4th Cir.1995); Akers v. Caperton, 998 F.2d 220, 227 (4th Cir.1993)). Therefore, Plaintiff's reliance on Doe is misplaced.

Based upon the facts pled by Plaintiff and viewed in a light most favorable to her, it is undisputed that the Mecklenburg County Court, not the Gaston County DSS Defendants, placed Tiffany in Mitchell's custody after the death of her adoptive mother. The Complaint is unclear who later placed Tiffany in foster care, but the foster care placement is not the origin of the claimed harm. The undersigned finds that there is no nexus between any arguable omission by these Defendants and Tiffany's subsequent death at the hands of an unknown assailant. The undersigned respectfully recommends that Plaintiff's claim against Defendants Benard and Williams in their individual capacities be dismissed.

Since there is no underlying constitutional violation by Defendants Benard and Williams in their individual capacities, Plaintiff's official capacity claims against them should also be dismissed. See Holloway v. City of Suffolk, 660 F. Supp.2d 693, 699 (E.D. Va. 2009) (quoting Waybright v. Frederick Cnty., 528 F.3d 199, 203-04 (4th Cir. 2008)(stating that the §1983 claim against the individual is "the gateway to all the other §1983 claims, for supervisors and municipalities cannot be liable under §1983 without some predicate constitutional injury at the hands of the individual [state] officer."). The undersigned respectfully recommends that Plaintiff's claim against Defendants Benard and Williams in their official capacities be dismissed.

### C. Plaintiff's Request for Leave to Amend Her Complaint

With regard to Plaintiff's request for leave to amend her Complaint, the undersigned respectfully recommends that the request be denied. Plaintiff's request to amend is contained in her

Response, Doc. 14. She has not filed the appropriate motion seeking leave to amend her Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure and as required by this Court's Local Civil Rules. As stated in Local Civil Rule 7.1(C)(2), "[m]otions shall not be included in responsive briefs. Each motion should be set forth as a separately filed pleading." More importantly, Plaintiff has not offered any legal basis for allowing an amendment of her Complaint, nor has she submitted a proposed amended Complaint, or identified the additional facts she wishes to add to her Complaint.

### III. ORDER

**IT IS ORDERED** that all further proceedings in this action, including <u>all</u> discovery, are **STAYED** pending the District Judge's ruling on this Memorandum and Recommendation and Order.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendant Captain Pete Davis' Motion to Dismiss," Doc. 10, be **GRANTED** and "Motion to Dismiss of Defendants Benard and Williams," Doc. 11, be **GRANTED** and Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**.

### V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder v. Ridenour</u>, 889 F.2d 1363,

1365 (4th Cir. 1989).  Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Max O. Cogburn, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: December 2, 2011

David S. Cayer
United States Magistrate Judge